■ LINDA A. BURNS, Respondent-Appellant, v STANLEY BURNS, Appellant-Respondent.—Order, Supreme Court, New York County (Sherman, J.), entered July 11, 1986, which (a) granted the enforcement motion by defendant to the extent of directing that the parties' cooperative apartment be offered for sale at a price of $725,000 and directed the parties to cooperate in the sale under penalty of contempt; (b) denied the motion by defendant for an order (i) suspending his support obligations until the apartment is sold, (ii) granting him damages for the failure to sell the apartment earlier, without prejudice to the commencement of a plenary action for such damages, (iii) vacating the plaintiff's ex parte income deduction order and, (iv) granting defendant counsel fees; (c) granted the cross motion by plaintiff to the extent of directing entry of a money judgment for support arrears in the amount of $11,333.32, and awarded her $250 in counsel fees, but denied the request to stay the sale of the cooperative apartment until the parties' children graduated from high school; and (d) referred the motion by defendant for a change of custody and downward modification of support, and that branch of the cross motion by plaintiff which sought upward modification of support and counsel fees, to a Special Referee to hear and report with recommendations, modified, on the law and the facts and in the exercise of discretion, and the matter is remanded for a hearing to determine whether there was a "mistake of fact" requiring vacatur of the income deduction order, whether defendant was entitled to cease his support payments and collect damages because plaintiff was in breach of her obligations under the court-ordered stipulation,

and to determine conditions for the sale of the cooperative apartment. That branch of the cross motion which seeks a judgment for arrears is held in abeyance pending the hearing and, as modified, the order is otherwise affirmed, without costs.

The parties' 12-year marriage was dissolved by a judgment of divorce, entered August 14, 1980, which incorporated a stipulation dated August 1, 1980, which was to survive the judgment. Under the provisions of the stipulation, defendant husband was to pay plaintiff unallocated monthly support of $2,833.32 for herself and the two children. Additionally, the marital cooperative apartment was to be placed on the market by June 1984, with plaintiff's assistance, and was to be sold by June 1985.

In January 1986, defendant ceased making the support payments called for by the court-ordered stipulation. Immediately after plaintiff's attorney issued an income execution order pursuant to CPLR 5241, defendant commenced a proceeding (1) to direct plaintiff to comply with the provision of the stipulation which directed the sale of the marital apartment, (2) suspending his financial obligations pending such compliance, (3) directing entry of a money judgment for damages as a result of noncompliance, (4) vacating the income execution order, and (5) for an award of costs and counsel fees.

According to defendant's affidavit in support of the motion, by October 1984 plaintiff had made no efforts to find a new residence. His attorney notified her attorney that defendant was placing the apartment on the market for sale. In March 1985, plaintiff retained a new attorney, who disavowed the stipulation and sought to renegotiate its terms, including the provision for sale of the apartment. Although the apartment was subsequently listed, plaintiff made it difficult for brokers to make appointments to show the apartment to prospective buyers. Defendant received a letter from a broker who stated that she had been denied entry to the apartment, and numerous calls from other brokers seeking to confirm plaintiff's statements that the apartment was under contract or no longer for sale.

Plaintiff made a cross motion for upward modification of child support and payment of certain educational, medical, and recreational expenses, an order staying sale of the apartment until the children finished high school, counsel fees, discovery, and a judgment for arrears. Plaintiff avers, and defendant denies, that, as a result of a brief reconciliation

between the parties in 1982, defendant agreed not to enforce the sale provision of the stipulation until both children graduated from high school.

It was an improvident exercise of discretion for Special Term to award judgment to plaintiff for arrears in support due under the stipulation while at the same time refusing to allow defendant to enforce his rights under the same stipulation. The evidence in the record indicates that plaintiff may be in default of her obligation to cooperate in the sale of the marital apartment. It is well settled that where, as here, the obligations of the respective parties arise under the same agreement and the issues presented are inextricably intertwined, a hearing should be held to determine and enforce the rights of both parties. *(Hallingby v Hallingby,* 110 AD2d 532 [1st Dept 1985]; *Lennard v Lennard,* 97 AD2d 713 [1st Dept 1983]; *accord, Bock v Bock,* 121 AD2d 672 [2d Dept 1986].) Special Term improperly denied defendant's application for damages based upon plaintiff's alleged noncompliance, and the direction that he pursue his remedies in a plenary action is directly contrary to the holding of *Lennard v Lennard (supra).*

In our view, since an income execution order has been issued, and the primary goal of CPLR 5241 is to expedite judicial resolution and enforcement of child support obligations, defendant must continue to fulfill his obligations until a hearing has been held to determine whether he was entitled to cease payments as a result of plaintiff's breach of her obligation under the stipulation. Only then can it be ascertained whether there has been a "mistake of fact", as defined in CPLR 5241 (a) (8), in respect to defendant's obligation, which would warrant vacatur of the income execution order. We further hold, and the parties agree, that, in the circumstances, a hearing must be held to set a new date for the sale of the apartment, and to determine the fair market value and conditions for sale of the apartment, particularly whether the appraisal value is to be an asking price from which the price may be negotiated or whether the parties are to be required to accept an offer only in that amount. Concur—Kupferman, J. P., Ross, Lynch, Milonas and Rosenberger, JJ.